UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

VICTORIA DIVISION

| | |
|---|---|
| Huiqun "Jenny" Lin Sun (a.k.a. Huiqun Zhang) and Texas Undercarriage Corp., | Case No. 6:25-cv-76 |
| *Plaintiffs,* | |
| v. | |
| Chunyi Zhao, | **Complaint** |
| *Defendant.* | |

Plaintiffs Huiqun "Jenny" Lin Sun (a.k.a. Huiqun Zhang) ("Sun") and Texas Undercarriage Corporation ("TUC" or the "Company") (collectively "Plaintiffs") hereby sue Defendant Chunyi Zhao ("Defendant" or "Zhao") and would respectfully show the honorable Court as follows:

I.     PRELIMINARY STATEMENT

1.     This action arises from Defendant Zhao's repudiation of binding stock purchase agreements through which she sold all her ownership interests in Texas Undercarriage Corp. ("TUC") to Plaintiff Sun. After duly executing the agreements transferring her stock, Zhao reversed course and now falsely claims majority ownership and the right to control TUC, notwithstanding her complete divestment from the Company.

1

2.      Zhao's actions threaten to destabilize corporate governance, interfere with TUC's business operations, and undermine the certainty of its ownership. Plaintiffs seek declaratory and injunctive relief to confirm Sun's sole ownership and control of TUC, to bar Zhao from continuing to assert false ownership claims, and to preserve the status quo pending final adjudication. Plaintiffs also seek specific performance compelling Zhao to deliver all stock certificates and related indicia of ownership as required by the executed agreements.

## II.    PARTIES

3.      Plaintiff Huiqun "Jenny" Lin Sun (a.k.a. Huiqun Zhang) ("Sun") is a citizen of Texas residing in Victoria, Texas.

4.      Plaintiff Texas Undercarriage Corporation ("TUC") is a Texas corporation whose principal office is located at 4253 Old Goliad Road, Victoria, Texas.

5.      Defendant Chunyi Zhao is a citizen of the People's Republic of China who is domiciled in Australia at 35 Riviera Street, Mentone VIC 3194, Australia.

## III.   JURISDICTION & VENUE

6.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because (a) Plaintiffs are citizens of Texas; (b) Defendant is a citizen of a foreign state; and (c) the amount in controversy exceeds $75,000, exclusive of interest and costs, as this action seeks to determine ownership and governance control of Texas Undercarriage Corporation, whose value far exceeds $75,000.

7.      This Court has personal jurisdiction over Defendant because she purposefully directed her conduct toward Texas, entered binding contracts governed

by Texas law with Texas residents, and her wrongful acts were directed at and caused harm in Texas, including in this District.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District, including the negotiation, execution, and breach of the parties' stock purchase agreements and the resulting injury to Plaintiffs in Victoria County, Texas. In the alternative, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendant is not a resident of the United States and may be sued in any judicial district.

## IV.    ALLEGATIONS

### A.    Formation of Texas Undercarriage Corporation

9.      The Parties and their respective spouses had a significant history of shared business interests in China, including in a machinery manufacturing company in Xuzhou, which opened in 2011. For years, they operated in a spirit of trust and reciprocity.

10.     On September 21, 2022, Plaintiff Sun, Defendant Zhao, and Zhao's husband, Wenbin Zhang, formed Texas Undercarriage Corporation ("TUC") for the purpose of opening a manufacturing business for industrial parts in Victoria, Texas.

11.     Under TUC's bylaws (the "Bylaws"), TUC is authorized to issue Class A and Class B stock shares. Ex. 1. Class A shares are voting shares with each outstanding share being entitled to one vote. *Id.* Holders of Class B shares have no voting powers but can request access to Company books and records. *Id.*

12.     TUC initially issued 1,000 total Class A shares. From this issuance, Sun received 800 Class A shares and Zhao received 200 Class A shares. Accordingly, Sun controlled 80-percent of the voting shares in TUC from the outset.

B.     2022 Class A Stock Purchase Agreement

13.     On November 1, 2022, Sun and Zhao executed a Stock Purchase Agreement (the "2022 Class A SPA") whereby Sun sold 310 of her Class A shares to Zhao in exchange for Zhao's promise to pay $6,851 to Sun. Ex. 2. Sun concurrently signed a bill of sale evidencing the transfer of these stocks to Zhao. Ex. 3.

14.     The terms of the 2022 Class A SPA were barebones: they specified a price and quantity of stock to be sold but did not specify a date when payment must be made and did not make the sale of stock contingent upon the receipt of payment. Ex. 2.

15.     As a result of the 2022 Class A SPA, Zhao held a total of 510 shares of Class A stock, giving her a 51-percent voting majority in TUC on November 1, 2022.

16.     Upon information and belief, on November 8 and November 9, 2022, Zhao caused her husband, Wenbin Zhang, to make payments totaling $6,851 to Sun in satisfaction of the 2022 Class A SPA purchase price.

C.     2024 Class A Stock Purchase Agreement

17.     On May 14, 2024, Sun and Zhao executed another Stock Purchase Agreement for the sale of Class A stock (the "2024 Class A SPA"). Ex. 4. This time, it was Zhao who sold all 510 of her Class A shares to Sun in exchange for Sun's promise to pay $11,271 to Zhao. *Id.* Zhao concurrently executed a bill of sale evidencing her

sale of Class A stock to Sun. Ex. 5. As a result of this transaction, Sun held 100-percent of TUC's Class A stock.

18.    As with the 2022 Class A SPA, the 2024 Class A SPA specified a price and quantity but did not specify a date for payment or make the transfer of stock contingent upon receipt of payment.

19.    To date, Zhao has never made any formal demand that Sun make payment under the 2024 Class A SPA. Given the history and business relationship of the Parties and their respective husbands, it is reasonable that Zhao would allow multiple years before demanding payment of this small amount when the contract did not specify a date for payment.

20.    On November 17, 2025, Sun wired the equivalent of $11,271 USD to Zhao in satisfaction of the 2024 Class A SPA purchase price. Ex. 6. This occurred after Zhao purported to unilaterally terminate the Class A SPA without ever making a demand for payment to Sun (discussed more below). Upon information and belief, Zhao received this payment and never rejected or returned it.

21.    Zhao never delivered the stock certificates to Sun, which she impliedly promised to do when she executed the 2024 Class A SPA and bill of sale.

D.    2024 Class B Stock Purchase Agreement

22.    In 2023, following an equity investment of $350,000 into TUC, Zhao became the owner of 35 non-voting Class B shares in TUC. Although no stock certificates were ever issued, the Class B shares existed as uncertificated securities under Texas law and were treated by Zhao, Sun, and the Company as validly issued

5

and outstanding equity. Consistent with this understanding, Zhao represented herself as the sole owner of the 35 Class B shares when Zhao and Sun executed the May 14, 2024 Stock Purchase Agreement (the "2024 Class B SPA") and corresponding Bill of Sale through which Zhao transferred her entire interest in the 35 Class B shares to Sun in exchange for Sun's promise to pay $350,000. Exs. 7 & 8.

23.    Like the other SPAs, this one did not specify a date for payment or make the sale of stock contingent upon the receipt of payment. Under Texas law, where no time for payment is stated, payment is due only within a reasonable time in light of the circumstances and the parties' course of dealing. Here, the Parties had a longstanding business relationship built on trust and had previously completed a stock sale without any defined payment timeline; further, Zhao never issued any demand for payment of the $350,000 purchase price. In this context, a substantial period without payment was consistent with the Parties' established practice and did not constitute a breach.

24.    Nevertheless, after Zhao purported to unilaterally terminate the 2024 Class B SPA on November 4, 2025 (discussed more below), Sun caused payment of the $350,000 purchase price to be wired to Zhao on or about December 15, 2025, in satisfaction of the 2024 Class B SPA purchase price. Ex. 10. Upon information and belief, Zhao received this payment and never rejected or returned it.

25.    Key facts of the Parties' stock purchase agreements are summarized in the table below:

6

| Stock Purchase Agreements | | | | | | |
|---|---|---|---|---|---|---|
| Date | Type | Shares | Seller | Buyer | Price | Payment |
| 11/1/22 | Class A | 310 | Sun | Zhao | $6,851 | 11/7/22 and 11/8/22 |
| 5/14/24 | Class A | 510 | Zhao | Sun | $11,271 | 11/17/25 |
| 5/14/24 | Class B | 35 | Zhao | Sun | $350,000 | 12/15/25 |

E.    Zhao's Repudiation of the 2024 Class A SPA and 2024 Class B SPA

26.    Starting in 2023, the machinery manufacturing company operated by Zhao's husband in Xuzhou, China, fell under legal scrutiny from provincial tax authorities. This regulatory issue eventually resulted in significant damage to the value of shareholders' interests in that entity.

27.    As a result of this damage, in June 2025, Sun requested that Zhao's husband, Wenbin Zhang, resign from his position with the Chinese manufacturing company. He refused the request, and this governance dispute precipitated a breakdown in the trust and professional relationship between Sun and Zhao.

28.    At this time, Zhao had already sold 100-percent of her TUC Class A voting shares and Class B non-voting shares to Sun, leaving Sun as the sole owner of all voting shares in TUC and fully divesting Zhao of all her equity in TUC.

29.    On November 4, 2025, Zhao, through Texas counsel, sent a letter to Sun (the "Demand Letter") demanding shareholder access to TUC's books and records and purporting to immediately terminate the 2024 Class A SPA and the 2024 Class B SPA. Ex. 9.

30.    In her Demand Letter, Zhao's attorney states that Sun's "nonpayment

constitutes a material breach of [her] payment obligations under the May 14, 2024

[stock purchase] agreements." *Id.* at 1. "Further," it added, "Ms. Zhao as the seller is

in possession of the original stock certificates which were never delivered to you." *Id.*

Notably, Zhao had never made any demand for payment under either 2024 SPA prior

to this Demand Letter.

31.    The Demand Letter next stated:

> Ms. Zhao hereby provides notice that she terminates the
> May 14, 2024, Stock Purchase Agreements for the Class A
> and Class B shares, effective immediately, based on [Sun's]
> failure to make timely payment and on the wrongdoings
> alleged. Ms. Zhao demands that you promptly acknowledge
> that the shares you did not purchase by payment remain
> Ms. Zhao's property and that TUC's shareholder records be
> adjusted accordingly.

*Id.* at 2. It went on to demand that Sun "[r]elinquish control of all Company accounts

and operations", "[r]eturn Company property and information", and "[p]rovide an

accounting". *Id.* Making clear Zhao's intent to repudiate the two SPAs, the Demand

Letter further stated:

> [b]ecause Buyer never furnished the bargained-for
> consideration, no valid transfer of equity occurred, and
> Seller remains the sole owner of the shares and all
> incidents of control. To the extent any shares, certificates,
> or ledger entries purport to reflect a transfer, Seller rejects
> and rescinds them and asserts a constructive trust over all
> proceeds, benefits, and corporate rights wrongfully
> exercised by the Buyer.

*Id.* at 3.

32.    After receiving the Demand Letter, Sun attempted to resolve the dispute

through negotiations, which were unsuccessful. Despite never receiving any formal

or informal demand for payment of the amounts owed under the 2024 Class A SPA and 2024 Class B SPA, Sun caused payment for these funds to be wired to Zhao on November 17, 2025, and December 15, 2025, respectively.

33.    Upon information and belief, Zhao's attempt to rescind the 2024 SPAs and assert ownership over TUC is a direct retaliatory response to Sun's request for her husband's resignation. Upon information and belief, Zhao is attempting to leverage the technicality of payment timing to wrongfully seize control of TUC as a tactical maneuver in the Parties' broader business separation and to impede Plaintiffs' ability to move forward with pre-existing business plans in China and the U.S.

F.    Sun's Ownership of the Class A and Class B Shares

34.    Zhao's attempted rescission of the 2024 SPAs and claim of ownership of Class A and Class B stock is invalid, legally unsound, and constitutes a repudiation and breach of binding contracts.

35.    The 2024 Class A SPA and 2024 Class B SPAs did not specify a date for payment. When a date for payment is not specified in a contract, it is implied that payment must be made within a reasonable time. What constitutes a reasonable time is determined based on the circumstances, and, on that front, significant weight is owed to Zhao's failure to make any demands for payment under either 2024 SPA. Further, the Parties had a history of extending significant trust and forbearance on business matters to each other such that waiting over a year to receive payment under these SPAs was not unreasonable or unexpected.

36.    Even granting, *arguendo,* Zhao's position that Sun had breached the 2024 SPAs by not making payment by the date of her Demand Letter, Zhao still would not own the Class A and Class B stock. Title to the stock passed to Sun upon the full execution of the SPAs and Bills of Sale. Therefore, under Texas law, Zhao cannot rescind the agreements to regain ownership; she is limited to monetary damages for any unpaid amounts.

37.    Zhao's repudiation of the SPAs and continued assertion of shareholder and governance rights create uncertainty as to the lawful ownership and control of TUC, destabilizing its corporate governance and placing the Company at risk of competing demands over financial accounts, management authority, and business operations, impairing its ability to conduct business in the ordinary course, damaging relationships with vendors, customers, employees, and regulators, and exposing it to potential liability for acting under disputed authority. These ongoing injuries are directly caused by Zhao's conduct and constitute irreparable harm that cannot be fully remedied by monetary damages, necessitating the declaratory and injunctive relief sought.

38.    The 2024 Class A and Class B Stock Purchase Agreements, together with the executed Bills of Sale, reflected a present intent by the Parties to transfer ownership of the subject shares to Sun as of May 14, 2024. Under Texas law, ownership of corporate shares transfers upon execution of such binding instruments unless the parties make delivery of stock certificates or payment of the purchase price a condition precedent—which the 2024 SPAs did not do. Accordingly, full legal and

equitable title to all Class A and Class B shares vested in Sun on May 14, 2024, regardless of the status of payment or Zhao's alleged continued possession of any physical certificates in the Class A stock. Zhao's retention of certificates did not prevent the transfer of ownership and serves only to create confusion regarding Sun's already-vested shareholder rights.

G.    Removal of Zhao and Zhang from Director and Officer Roles.

39.    On or about December 18, 2025, Sun, as the sole owner of all Class A voting shares in TUC, formally removed Zhao and her husband, Wenbin Zhang, from their positions as directors of TUC. Ex. 11 (Unanimous Written Consent of Shareholders). Later the same day, the remaining directors of TUC removed Zhao and Mr. Zhang from their officer positions in TUC. Ex. 12 (Unanimous Written Consent of the Board of Directors).

V.    CAUSES OF ACTION

40.    Plaintiffs incorporate all foregoing factual allegations into their causes of action and incorporate all allegations in each cause of action into all other causes of action.

### Count 1: Declaratory Judgment (Class A Shares)

41.    Plaintiffs seek a declaration under the Uniform Declaratory Judgments Act that the 2024 Class A SPA and corresponding Bill of Sale for 510 Class A voting shares of TUC were valid and effective, and that full legal and equitable title to all 510 Class A shares transferred to Sun on May 14, 2024. Plaintiffs further seek a declaration that Zhao has no current ownership interest in any Class A shares; that

11

Zhao's attempt to "terminate" or "rescind" the Class A SPA in her Demand Letter is invalid and without legal effect; that Sun retains exclusive voting and governance rights in TUC arising from her ownership of 100-percent of the Class A stock; and that Zhao possesses no Class-A shareholder rights of any kind, including the right to assert governance interests in TUC.

42.    A substantial controversy exists because Zhao asserts that she remains a shareholder and majority owner and claims authority to act on behalf of TUC. Declaratory relief is necessary to resolve ownership of the Class A voting shares and eliminate Zhao's false claims of control.

43.    Plaintiffs further seek recovery of their costs and reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009, as are equitable and just.

Count 2: Declaratory Judgment (Class B Shares)

44.    Plaintiffs also seek a declaration that the 2024 Class B SPA and corresponding Bill of Sale for 35 Class B shares of TUC were valid and effective, and that full title to the Class B shares transferred to Sun on May 14, 2024. Plaintiffs seek a further declaration that Zhao has no current ownership interest in any Class B shares; that Zhao's unilateral attempt to "terminate" or "rescind" the 2024 Class B SPA is invalid; and that Zhao possesses no Class B shareholder rights of any kind, including any right to inspect books and records, demand information, or assert economic or governance interests in TUC.

45.    A substantial controversy exists because Defendant claims to own the Class B shares and asserts shareholder rights inconsistent with the 2024 Class B SPA and corresponding Bill of Sale. Declaratory relief is required to resolve the parties' rights and prevent further disruption to TUC's operations.

46.    Plaintiffs further seek recovery of their costs and reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009, as are equitable and just.

### Count 3: Breach of Contract (2024 Class A SPA)

47.    Zhao entered the 2024 Class A SPA whereby she sold 510 Class A voting shares in TUC and executed a corresponding Bill of Sale transferring full title to those shares to Sun on May 14, 2024. The 2024 Class A SPA does not condition transfer of title on payment of the purchase price, contains no deadline for payment, and does not make time of payment essential. The 2024 Class A SPA did not make payment a condition precedent to the transfer of ownership.

48.    Zhao breached the 2024 Class A SPA by unilaterally purporting to rescind and terminate the agreement in her Demand Letter without contractual authority, without notice or opportunity to cure, and despite having fully executed documents transferring title. Zhao's repudiation of the 2024 Class A SPA and assertion of ownership inconsistent with her contractual obligations constitute a breach.

49.    It is an implied term of the 2024 Class A SPA that Zhao was required to deliver to Sun all stock certificates and related indicia of ownership for the shares

sold, and Zhao breached the agreement by refusing to do so and instead withholding the certificates for the express purpose of bolstering her false claim of continued ownership and authority over TUC. Though full legal and equitable title to the shares transferred to Sun upon execution of the 2024 Class A SPA and Bill of Sale, Zhao's refusal to complete her remaining delivery obligations subjects TUC to the risk of third-party confusion and continuing operational disruption, making specific performance necessary to compel completion of the agreed transfer and to prevent harms that cannot be adequately remedied by monetary damages alone.

50.     Sun performed her obligations under the 2024 Class A SPA when she made payment of the contract price to Zhao on November 17, 2025, which constitutes performance within a reasonable time under Texas law given the circumstances, parties' course of dealing, and absence of any prior demand for payment.

51.     Plaintiffs seek specific performance of delivery of stock certificates for 510 Class A TUC shares and all other relief available at law, including recovery of their reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 et seq.

## VI.     ATTORNEYS' FEES

52.     Plaintiffs seek an award of all reasonable and necessary attorneys' fees incurred in connection with its claims under the Texas Uniform Declaratory Judgment Act, as are equitable and just. TEX. CIV. PRAC. & REM. CODE § 37.009.

53.     Plaintiff Sun also seeks an award of all reasonable and necessary attorneys' fees incurred in connection with its claim for breach of contract pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

54.     Plaintiff Sun hereby makes presentment of her contract claim upon Defendant and demands performance of her obligations to deliver all stock certificates to Sun pursuant to her obligations under the 2024 Class A SPA and retraction of her repudiation of the same.

## VII.  JURY DEMAND

55.     Plaintiffs hereby demand a trial by jury on all issues so triable.

## VIII.  PRAYER

56.     Plaintiffs pray that Defendant be cited to appear and answer, and that upon final hearing the Court enter judgment for Plaintiffs and grant the following relief:

a.  A declaration that:

  i.  the May 14, 2024 Class A Stock Purchase Agreement and corresponding Bill of Sale are valid and enforceable, and that full legal and equitable title to all 510 Class A voting shares of Texas Undercarriage Corporation is vested solely in Plaintiff Sun;

  ii.  the May 14, 2024 Class B Stock Purchase Agreement and corresponding Bill of Sale are valid and enforceable, and that full legal and equitable title to all 35 Class B shares of Texas Undercarriage Corporation is vested solely in Plaintiff Sun;

  iii.  Defendant has no ownership interest in any Class A or Class B shares of Texas Undercarriage Corporation and possesses no shareholder rights of any kind, including—but not necessarily limited to—any right to inspect books and records, demand an accounting, assert governance authority, or claim economic interests; and

iv. Defendant's purported termination, rescission, or repudiation of the 2024 Class A SPA and 2024 Class B SPA is invalid and without legal effect.

b. An order requiring Defendant to specifically perform her obligations under the 2024 Class A SPA by delivering to Plaintiff Sun all original stock certificates and any other instruments or documents evidencing ownership of the Class A shares of Texas Undercarriage Corporation sold pursuant to the 2024 Class A SPA.

c. Preliminary and permanent injunctions prohibiting Defendant from:

i. Representing to any person or entity that she is a shareholder, majority owner, sole owner, officer, director, manager, or person possessing governance or operational authority in or over TUC;

ii. Accessing, attempting to access, altering, or interfering with any of TUC's bank accounts, financial accounts, or payment platforms, including but not limited to any effort to add herself or any other person as an authorized signer, account owner, or user;

iii. Communicating with or contacting any financial institution, vendor, customer, governmental regulator, taxing authority, insurer, employee, or contractor of TUC for the purpose of asserting ownership, authority, or control over TUC or seeking to influence such persons' dealings with the Company;

iv. Interfering in TUC's business operations or exercising any purported direction or control over TUC's management, contracts, assets, manufacturing activities, finances, or corporate affairs;

v. Taking any action premised upon or arising from her attempted "termination," rescission, or repudiation of the Stock Purchase Agreements, including any effort to disgorge Company assets, claim Company benefits, impede Plaintiff Sun's exclusive control of the Company, claim access to Company books and records or right to demand an accounting, or assert governance or shareholder rights in the Company;

vi. Otherwise acting in any manner inconsistent with Plaintiffs' exclusive ownership and control of all Class A and Class B shares of TUC; and

vii. Any other injunctive relief to which Plaintiffs may be entitled.

16

d. Recovery of Plaintiffs' reasonable and necessary attorneys' fees and taxable costs pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009 for Plaintiffs' declaratory judgment claims, as are equitable and just, and pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 for Plaintiffs' breach of contract claim.

e. Prejudgment and post-judgment interest on all recoverable sums as allowed by law.

f. Such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Dated: December 22, 2025                          Respectfully submitted,

**FOSTER YARBOROUGH PLLC**

*s/ Patrick Yarborough*
PATRICK YARBOROUGH
Texas Bar No. 24084129
patrick@fosteryarborough.com

LUKE OTT
Texas Bar No. 24116864
luke@fosteryarborough.com

440 Louisiana Street, Suite 1800
Houston, Texas 77002
T: (713) 331-5254
F: (713) 513-5202

***Counsel for Plaintiffs,***

HUIQUN "JENNY" LIN SUN
(a.k.a. HUIQUN ZHANG) AND

TEXAS UNDERCARRIAGE CORP.