# Exhibit K

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| **Huiqun "Jenny" Lin Sun (a.k.a. Huiqun Zhang) and Texas Undercarriage Corp.,** | |
| *Plaintiffs/Counterclaim Defendants,* | **Case No. 6:25-cv-76** |
| **v.** | **Judge David S. Morales** |
| **Chunyi Zhao,** | **Magistrate Judge Jason B. Libby** |
| *Defendant/Counterclaim Plaintiff.* | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF CHUNYI ZHAO'S ANSWERS, RESPONSES, AND OBJECTIONS TO PLAINTIFF SUN'S REQUESTS FOR EXPEDITED DISCOVERY**

Defendant/Counterclaim Plaintiff, Chunyi Zhao ("Zhao"), submits her Answers, Responses, and Objection to Plaintiff Sun's Requests for Expedited Discovery.

**GENERAL OBJECTIONS**

Zhao objects to Plaintiff's Expedited Interrogatories and Requests for Production to the extent they seek information or documents beyond the scope permitted by Fed. R. Civ. P. 26(b)(1), 33, and 34, and any applicable orders or agreements governing expedited discovery. The following General Objections are incorporated into and apply to each Interrogatory and Request for Production to the extent applicable, whether or not repeated in a specific response. Any response or production is made subject to these objections and shall not be deemed a waiver of any objection or privilege.

1. **Relevance / Rule 26(b)(1).** Zhao objects to each request to the extent it seeks information that is not relevant to any party's claim or defense and/or is not reasonably calculated to lead to the discovery of admissible evidence within the meaning of Fed. R. Civ. P. 26(b)(1).

2. **Proportionality.** Zhao objects to each request to the extent it is not proportional to the needs of the case, including because it is unreasonably cumulative or duplicative, the burden or expense of the proposed discovery outweighs its likely benefit, or the request seeks discovery that can be obtained from a more convenient, less burdensome, or less expensive source. Fed. R. Civ. P. 26(b)(1), 26(b)(2).

3. **Overbreadth (Subject Matter / Custodians / Sources).** Zhao objects to each request to the extent it is overbroad in subject matter, custodian, source, medium, or category of documents/ESI, including where it is not reasonably limited to matters at issue in this litigation.

4. **Temporal Overbreadth.** Zhao objects to each request to the extent it seeks information or

1

documents outside a reasonable time period relevant to the claims and defenses, including where the request uses open-ended time frames (e.g., "to the present") without reasonable limitation.

5. **Vague, Ambiguous, and Undefined Terms.** Zhao objects to each request to the extent it is vague, ambiguous, uses undefined terms, or employs terms susceptible to multiple reasonable interpretations (including but not limited to "relating to," "concerning," "reflecting," "any," "all," "including," and "communications between/among"), such that Zhao cannot reasonably ascertain what is being requested. Zhao will respond, if at all, based on a reasonable interpretation of the request.

6. **Compound and Conflated Requests.** Zhao objects to each request to the extent it is compound, multifarious, or improperly combines multiple distinct inquiries (including by using "and/or" or by seeking multiple categories of information in a single interrogatory), making it unduly burdensome to answer and difficult to determine what would constitute a complete response.

7. **Undue Burden / Disproportionate Burden.** Zhao objects to each request to the extent it imposes undue burden, including where it would require an extensive search across numerous devices, accounts, applications, third parties, legacy systems, or locations not reasonably accessible.

8. **Duplicative / Equally Available.** Zhao objects to each request to the extent it is duplicative of other discovery requests, seeks information already produced or previously provided, or seeks information equally available to Plaintiff from Plaintiff's own records, third parties, or public sources.

9. **Possession, Custody, or Control.** Zhao objects to each request to the extent it seeks documents or information not within Zhao's possession, custody, or control as that phrase is used in Fed. R. Civ. P. 34.

10. **Privilege / Work Product / Trial Preparation.** Zhao objects to each request to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, the attorney mental impressions doctrine, or any other applicable privilege, immunity, or protection. Any inadvertent production shall not constitute waiver, and Zhao reserves all rights under Fed. R. Evid. 502 and any applicable clawback agreement or order.

11. **Confidential, Private, or Protected Information.** Zhao objects to each request to the extent it seeks confidential, proprietary, or private information (including personal financial account numbers, tax information, medical information, or information implicating privacy rights of non-parties) without appropriate safeguards. To the extent responsive information exists, production (if any) should be subject to an appropriate protective order and reasonable redactions.

12. **ESI Format / Accessibility / Metadata.** Zhao objects to each request to the extent it demands ESI in a particular form or seeks metadata, deleted data, forensic images, or information from sources not reasonably accessible without a showing of good cause. Fed. R. Civ. P. 26(b)(2)(B), 34(b)(2)(E).

13. **Premature / Expedited Discovery Limits.** Zhao objects to each request to the extent it exceeds the scope of any agreed or ordered expedited discovery, including by seeking broad merits discovery unrelated to the purpose of expedited discovery (e.g., preliminary injunction issues) or imposing unrealistic deadlines.

14. **Instructions and Definitions.** Zhao objects to Plaintiff's instructions and definitions to the extent they purport to expand Zhao's obligations beyond the Federal Rules, applicable orders, or governing law, including any instruction that attempts to impose unilateral interpretations, to shift burdens, or to require Zhao to assume facts not admitted.

15. **No Admission.** The fact that Zhao responds or produces documents shall not be construed as an admission of the truth of any allegation, the authenticity or admissibility of any document, or the relevance of any information or document produced.

16. **Reservation of Rights / Supplementation.** Zhao reserves the right to amend, supplement, or correct these responses and objections as discovery proceeds and as additional information becomes available, subject to Fed. R. Civ. P. 26(e).

# INTERROGATORIES

## Interrogatory No. 1

Given your denial of Plaintiff's allegation that you and your husband had a "significant history of shared business interests in China, including a machinery manufacturing company in Xuzhou, which opened in 2011", *compare* Compl. ¶ 9 *with* Orig. Ans. & Countercl. ¶ 9 (denying the allegations in ¶ 9 of Compl.), describe the following: the nature of the professional, financial, and personal relationships, if any, between and among you, Wenbin Zhang, Plaintiff Sun, and Tao "Link" Lin, including, but not necessarily limited to, the length of time you and/or Mr. Zhang have known Plaintiff Sun and/or Mr. Lin, the identity, timeframe, and general nature of any shared business ventures or other business relationships you and/or Mr. Zhang have had with Plaintiff Sun and/or Mr. Lin, and any financial relationships (including co-ownership of property and lending relationships) you and/or Mr. Zhang have had with Plaintiff Sun and/or Mr. Lin.

## ANSWER:

Zhao objects to Interrogatory No. 1 as vague and ambiguous, including as to the meaning and scope of the phrases "significant history," "shared business interests," "professional, financial, and personal relationships," "shared business ventures," "other business relationships," and "financial relationships," and as to the instruction to "compare" pleadings. Zhao further objects that the interrogatory is compound and multifarious, as it seeks multiple distinct categories of information regarding multiple individuals (Zhao, Wenbin Zhang, Sun, and Tao "Link" Lin) and multiple topics (professional, personal, financial, business ventures, co-ownership of property, and lending relationships) within a single interrogatory. Zhao also objects that Interrogatory No. 1 is overbroad and not proportional to the needs of the case to the extent it seeks information untethered to the claims and defenses at issue and/or to the scope of any agreed or ordered expedited discovery, and to the extent it seeks information about third parties and/or private personal or financial matters without adequate limitation. Zhao further objects to the extent the interrogatory calls for information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges.

Subject to and without waiving the foregoing objections, and based on a reasonable interpretation of Interrogatory No. 1, Zhao states as follows: Zhao's husband, Wenbin Zhang, has had a longstanding personal relationship with Sun's husband, Tao "Link" Lin, spanning approximately 20 years. In or about early September 2022, Lin approached Zhang and proposed that the two families work together to form a joint venture in Texas to manufacture and sell machinery products in the United States. In reasonable reliance upon the representations of Sun and Lin regarding mutual trust, joint operation, and fair dealing, Zhao agreed to form TUC as such a joint venture. Prior to the formation of TUC, the parties did not have any formal co-ownership of business entities. Zhao denies that she and/or Mr. Zhang had any "significant history of shared business interests in China" with Sun and/or Mr. Lin as alleged in the Complaint. To the extent Plaintiff's interrogatory seeks information about any business relationship between Xuzhou Laiyi Precision Machinery Co., Ltd. ("XLP")and TUC, Zhao states that XLP wired $4,000,000 to TUC on or about November 1, 2024, to fund TUC's operations, in reliance on representations by Lin and Sun that the funds would be used to construct a manufacturing facility on TUC's property in Victoria, Texas. Zhao will supplement this response as appropriate in accordance with Fed. R. Civ. P. 26(e).

**Interrogatory No. 2**

Given your admission that you "did not make a formal demand for payment" to Plaintiff Sun under either the 2024 Class A SPA or the 2024 Class B SPA ("aside from the terms" of these SPAs), Orig. Ans. & Countercl. ¶¶ 19 & 23, between the time of these SPAs' execution until the date of your November 4, 2025 Letter, Orig. Compl. Ex. 9, explain the reason(s), if any, why you did not make any formal demand(s) for payment during this time.

**ANSWER:**

Zhao objects to Interrogatory No. 2 as vague and ambiguous as to the phrases "formal demand," "aside from the terms," and "the reason(s), if any," and as overbroad and not proportional to the extent it seeks a narrative explanation untethered to any claim or defense and/or beyond the scope of any agreed or ordered expedited discovery. Zhao further objects to the extent the interrogatory seeks information concerning communications with counsel or litigation strategy, which are protected by the attorney-client privilege and work-product doctrine.

Subject to and without waiving the foregoing objections, Zhao responds that she did not issue a separate "formal demand" for payment prior to the November 4, 2025 demand/termination letter, because no demand was required under law, the parties written agreements, or the parties' past course of conduct. Rather, Zhao understood that the parties' respective rights and obligations were governed by the Transaction Documents themselves. Zhao expected that Sun would provide the payment required without demand and within a reasonable time, just as Zhao had done pursuant to prior stock purchase agreements executed and consummated between the parties. Under those scenarios, Zhao made payment to Sun without demand and within 7-8 days of the execution of the stock purchase agreement. Zhao further states that the November 4, 2025 letter addressed (among other matters) Sun's nonpayment and sought access to TUC's books and records.

**Interrogatory No. 3**

Explain your subjective intent in executing the 2024 Class A SPA, the 2024 Class A BOS, the 2024 Class B SPA, and the 2024 Class B BOS, including, but not necessarily limited to, (i) whether by signing any of these documents you intended to transfer ownership of Class A and/or Class B Stock in TUC to Plaintiff Sun and (ii) your motivation(s) and goal(s) in executing these documents.

**ANSWER:**

Zhao objects to Interrogatory No. 3 to the extent it seeks Zhao's "subjective intent," "motivation(s)," and "goal(s)" in a manner that is vague, overbroad, and not proportional, and to the extent it calls for a narrative description of mental impressions not reasonably limited to the issues permitted in expedited discovery. Zhao further objects to the extent the interrogatory improperly invites a legal conclusion or seeks to vary, contradict, or rewrite the unambiguous terms of the Transaction Documents, which speak for themselves. Zhao also objects to the extent the interrogatory seeks information protected by the attorney-client privilege and work-product doctrine, including any communications with counsel regarding the transaction or this litigation.

Subject to and without waiving the foregoing objections, Zhao states that she executed the Transaction Documents in connection with the parties' contemplated transaction regarding TUC shares, and that those documents speak for themselves. At the time of execution, Zhao intended to comply with her obligations under the SPAs, if, and only if, (i) Sun paid the required sums within a reasonable time and (ii) all corporate formalities under TUC's Bylaws occurred. Neither happened. Consequently, Zhao disputes Sun's contention that any transfer of Zhao's shares was consummated and/or became effective in May 2024, including because (among other reasons) Sun did not timely tender the stated purchase prices within a reasonable time or prior to Zhao's termination of those agreements. Further, there was a failure of compliance with the transfer formalities required by TUC's Bylaws—including surrender for cancellation of certificated shares and appropriate stock-transfer-book entries. Zhao reserves the right to supplement as discovery proceeds.

**Interrogatory No. 4**

Identify each payment made by you and/or Wenbin Zhang to either Plaintiff Sun or Tao "Link" Lin since January 1, 2024, and identify each payment received by you and/or Wenbin Zhang from either Plaintiff Sun or Tao "Link" Lin since January 1, 2024. This includes, but is not necessarily limited to, all payments made by Mr. Zhang to Mr. Lin since January 1, 2024.

**ANSWER:**

Zhao objects to Interrogatory No. 4 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks identification of "each payment" to/from multiple persons over an open-ended period and without limitation to payments relevant to the claims and defenses. Zhao further objects that the interrogatory is vague and ambiguous as to what constitutes a "payment" (including whether it encompasses reimbursements, gifts, household expenses, or other personal transfers) and the level of detail required to "identify" each payment. Zhao further objects to the extent the interrogatory seeks private financial information, including information relating to non-party Wenbin Zhang, without adequate limitation or protective safeguards.

Subject to and without waiving the foregoing objections, Zhao states that she will identify and, where appropriate, produce non-privileged, reasonably available information sufficient to describe responsive transactions, if any, between Zhao and Sun during the relevant time period. To Zhao's knowledge, the principal payments made in connection with TUC during the relevant period include: (a) Zhao's contribution of $350,000 in or around January 2023 for TUC's land purchase; and (b) the $4,000,000 wire from XLP to TUC on or about November 1, 2024, for TUC's operations. Zhao is not aware of any payments from Sun or Lin to Zhao or Zhang during the relevant period, other than the rejected post-termination tenders that were placed into counsel's trust account pending adjudication. Zhao further objects to and will not disclose non-party private financial information beyond what is relevant and proportional to the claims and defenses, absent appropriate safeguards.

**Interrogatory No. 5**

Identify and describe each instance after May 14, 2024, in which you exercised or attempted to

6

exercise any shareholder rights in TUC, or acted in a manner consistent with being a shareholder of TUC—other than by sending the letter to Plaintiff Sun (i.e., Orig. Compl. Ex. 9) or filing any derivative shareholder action in the instant case. This interrogatory does include, but not necessarily limited to: voting or attempting to vote at any TUC shareholder meeting; executing or signing any written shareholder consent in lieu of a meeting; calling or demanding a special meeting of TUC shareholders; receiving or directing any TUC distribution or dividend; exercising or claiming any preemptive right to purchase TUC shares; purporting to vote to elect or remove any TUC director; purporting to vote on any amendment to TUC's bylaws or articles of incorporation; or holding yourself out to any lender, creditor, investor, or third party as a shareholder of TUC.

**ANSWER:**

Zhao objects to Interrogatory No. 5 as vague and ambiguous, including as to the meaning of "exercised," "attempted to exercise," "shareholder rights," and "acted in a manner consistent with being a shareholder," and as overbroad and not proportional to the extent it seeks an exhaustive catalogue of any and all conduct that could arguably be characterized as "consistent with being a shareholder." Zhao further objects that the interrogatory is compound and includes a lengthy, non-exhaustive list that is itself vague and burdensome to apply. Zhao also objects to the extent the interrogatory calls for speculation regarding how third parties may have perceived Zhao or whether any conduct "held [Zhao] out" to third parties as a shareholder.

Subject to and without waiving the foregoing objections, Zhao states that, after May 14, 2024, she did not vote at any TUC shareholder meeting, execute any written shareholder consent, call or demand a special meeting, or receive any dividend or distribution from TUC. Zhao further states that her conduct concerning TUC after that date has been limited to (i) communications and actions taken to request access to TUC's books and records and to dispute Sun's claimed "sole owner" status, including the November 4, 2025 letter, and (ii) pursuing and defending claims in this litigation.  However, Zhao notes that Sun and Lin continued to treat Zhao as a director and shareholder of TUC after May 14, 2024, which is inconsistent with Plaintiffs' position that the 2024 SPAs vested ownership upon execution. Specifically: (a) on or about December 19, 2024, Lin emailed Zhao and Zhang proposing that TUC acquire a second parcel of land in Texas, seeking their input as company leadership; and (b) on or about January 16 and 22, 2025, Sun emailed Zhao and Zhang requesting their signatures on Unanimous Consent of the Board of Directors resolutions for TUC land acquisition and investment decisions—thereby acknowledging Zhao's continued status as a TUC director. Zhao will produce responsive documents and reserves the right to supplement this response as appropriate.

**REQUESTS FOR PRODUCTION**

**Request for Production No. 1**

All non-privileged communications between/among any combination of Plaintiff Sun, Tao "Link" Lin, Defendant Zhao, and Wenbin Zhang from January 1, 2021, to the present, including, but not necessarily limited to all emails, voicemails, text messages, instant messages (including WeChat messages) and letters.

**RESPONSE:**

Zhao objects to Request for Production No. 1 as overbroad and not proportional to the needs of the case to the extent it seeks "all" communications among four individuals over a multi-year period (January 1, 2021 to the present) without limitation to the claims and defenses or to the scope of any agreed or ordered expedited discovery. Zhao further objects that the request is vague and ambiguous as to the breadth of "communications," "between/among," and "any combination," and is unduly burdensome to the extent it would require collection and review of large volumes of ESI from multiple platforms and devices. Zhao further objects to the extent the request seeks communications of non-party Wenbin Zhang or Tao "Link" Lin that are not within Zhao's possession, custody, or control.

Subject to and without waiving these objections, Zhao will produce non-privileged communications in her possession, custody, or control between Zhao and Sun, and between Zhao and Tao "Link" Lin, that relate to the Transaction Documents, the May 14, 2024 transaction, the parties' dispute regarding TUC share ownership, and the November 4, 2025 demand/termination letter. Zhao will also produce non-privileged communications to which Zhao was a party among any combination of the identified individuals that concern those same topics. Zhao will not search for or produce communications solely between non-parties (e.g., Zhang–Lin) absent a showing of possession, custody, or control and relevance/ proportionality.

**Request for Production No. 2**

All transaction records evidencing the transaction(s) identified in your response to Interrogatory 4.

**RESPONSE:**

Zhao objects to Request for Production No. 2 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all transaction records" without limitation to transactions relevant to the claims and defenses and/or within the scope of any agreed or ordered expedited discovery. Zhao further objects to the extent the request seeks private financial information (including account numbers and information of non-parties), and to the extent it seeks records not within Zhao's possession, custody, or control.

Subject to and without waiving these objections, and consistent with Zhao's response to Interrogatory No. 4, Zhao will produce non-privileged documents in her possession, custody, or control sufficient to evidence responsive transactions, if any, between Zhao and Sun during the relevant period, with appropriate redactions of sensitive financial information (e.g., account

numbers) and subject to a protective order or confidentiality agreement as appropriate. Zhao is not producing records reflecting transactions solely between non-parties (including between Wenbin Zhang and Tao "Link" Lin) to the extent such records are not within Zhao's possession, custody, or control and/or are not relevant and proportional.

**Request for Production No. 3**

All documents and communications reflecting or relating to the "post-termination funds" referenced in paragraph 18 of Defendant's Memorandum in Support of Motion for Preliminary Injunction (Dkt. 20), including their source, the date(s) of receipt, the movement or disposition of those funds from the date of receipt through January 12, 2026, and the transfer or deposit of any such funds into your counsel's IOLTA or trust account, including but not limited to bank statements, wire transfer records, deposit records, account ledgers, payment confirmations, remittance advices, and any written instructions or communications directing the transfer of such funds.

**RESPONSE:**

Zhao objects to Request for Production No. 3 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all documents and communications" regarding the "post-termination funds," including detailed account-level information and communications/instructions to counsel, without reasonable limitation. Zhao further objects that the request seeks confidential and private financial information and information pertaining to counsel trust/IOLTA accounts, and to the extent it seeks attorney-client communications and attorney work product (including communications conveying legal advice and/or reflecting litigation strategy). Zhao further objects to the extent the request seeks documents not within Zhao's possession, custody, or control.

Subject to and without waiving these objections, Zhao will produce non-privileged documents in her possession, custody, or control sufficient to show the receipt and disposition of the referenced funds and the transfer/deposit of such funds into counsel's trust/IOLTA account. Specifically, Zhao states that the post-termination funds totaling $361,271 (comprising the $11,271 Class A payment wired November 17, 2025, and the $350,000 Class B payment wired December 15, 2025) were deposited into the IOLTA account of Archer & Greiner, P.C. on or about January 12, 2026. Upon change of counsel, these funds were transferred to the trust account of FisherBroyles, LLP, where they remain pending Court order or written agreement of the parties. Zhao will produce redacted banking confirmations or transaction receipts (omitting account numbers and other sensitive information) sufficient to document the foregoing, subject to a protective order.

**Request for Production No. 4**

All documents and communications reflecting each instance you identified in response to Interrogatory No. 5.

**RESPONSE:**

Zhao objects to Request for Production No. 4 as vague and ambiguous to the extent it seeks "all documents and communications reflecting each instance" identified in response to Interrogatory No. 5, and as overbroad and not proportional to the extent it seeks broad categories of documents beyond what is necessary to address the limited conduct described in Zhao's response. Zhao further objects to the extent the request seeks documents not within Zhao's possession, custody, or control, seeks documents that are equally available to Plaintiff, or seeks privileged communications or work product.

Subject to and without waiving these objections, and consistent with Zhao's response to Interrogatory No. 5, Zhao will produce non-privileged documents in her possession, custody, or control sufficient to evidence (if any) her communications/actions requesting access to TUC's books and records and disputing Sun's claimed ownership status, including the November 4, 2025 letter and any non-privileged correspondence relating to that request. Zhao will also produce (to the extent in her possession, custody, or control) communications reflecting Sun's and Lin's treatment of Zhao as a TUC director after May 14, 2024, including communications regarding proposed land acquisitions and requests for director consent signatures.

## Request for Production No. 5

All documents and communications relevant to the issue of who owns Class A and Class B stock in TUC, including, but not necessarily limited to all stock certificates in your possession, custody, or control for any Class A or Class B shares in TUC.

## RESPONSE:

Zhao objects to Request for Production No. 5 as overbroad and not proportional to the extent it seeks "all documents and communications relevant to" stock ownership, which could be read to encompass virtually any corporate, financial, or personal record from TUC's inception to the present. Zhao further objects to the request to the extent it seeks documents not within Zhao's possession, custody, or control (including corporate records maintained by TUC), seeks confidential or private information of non-parties, or seeks privileged communications or work product.

Subject to and without waiving these objections, Zhao will produce non-privileged documents in her possession, custody, or control sufficient to address the ownership of the Class A and Class B shares at issue, including copies of the Transaction Documents to the extent not already attached to the pleadings, Zhao states that she possesses the original Class A stock certificates, which were never surrendered for cancellation as required by TUC's Bylaws Section 7.2, and will produce copies thereof. TUC's corporate records (including minute books, stock ledgers, and stock transfer books) are not in Zhao's possession, custody, or control, but rather are maintained by TUC and/or Sun.

10

Dated: April 17, 2026

Respectfully submitted, and as to all objections

FISHERBROYLES, LLP

By: */s/ Michael R. Traven*

Michael R. Traven
Admitted Pro Hac Vice
21 E. State Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 370-0614
michael.traven@fisherbroyles.com

Jiangang "James" Ou
Texas Bar No. 24127006
S.D. Tex. Bar No. 3435797
2925 Richmond Ave., Suite 1200
Houston, Texas 77098
Telephone: (713) 732-1637
James.Ou@fisherbroyles.com

Robert B. Graziano
Admitted Pro Hac Vice
950 North Collier Blvd., Suite 205
Marco Island, Florida 34145
Telephone: (239) 877-3077
robert.graziano@fisherbroyles.com

Counsel for Defendant/Counterclaim Plaintiff
Chunyi Zhao

11

## CERTIFICATION

I, Chunyi Zhao, certify under penalty of perjury that I have read the foregoing Defendant/Counterclaim Plaintiff Chunyi Zhao's Answers, Responses, and Objections to Plaintiff Sun's Requests for Expedited Discovery, and that the answers, responses, and objections contained therein are true and correct to the best of my knowledge and belief.

Dated: April 17, 2026

Chunyi Zhao

12